## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ROBERT ELLISON,

      Plaintiff,

v.                                         Civ. No. 16-415 GBW/GJF

THE ROOSEVELT COUNTY BOARD OF
COUNTY COMMISSIONERS, *et al.*,

      Defendants.

### MEMORANDUM OPINION AND ORDER

      This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (*doc. 19*), Plaintiff's Motion to File Second Amended Complaint (*doc. 22*), and the parties' accompanying briefing on these matters (*docs. 20, 21, 23, 25, 26*).  Having reviewed the briefing and being fully advised, the Court will grant the Motion to Dismiss and deny as futile the Motion to File Second Amended Complaint.

### I.    PROCEDURAL POSTURE

      Plaintiff Robert Ellison is suing his former employer and various state officials under 42 U.S.C. § 1983 for violation of his First and Fourteenth Amendment rights through retaliatory discharge and deprivation of his liberty interest.  *See generally doc. 15*.  Plaintiff has also brought a state law claim under the New Mexico Whistleblower Protection Act ("WPA").  *Id.* at 20-22.

Plaintiff initiated suit in this Court on May 9, 2016, and filed his First Amended Complaint on June 22, 2016. *Docs. 1, 15*. On July 15, 2016, Defendants moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to sufficiently plead his federal claims. *Doc. 20* at 8-24. While Defendants do not challenge the New Mexico WPA claim on its merits, they argue that the Court should not exercise supplemental jurisdiction over that claim if the federal claims are dismissed. *Id.* at 24-25.

On July 25, 2016, Plaintiff moved to file a Second Amended Complaint, seeking to include two additional factual allegations in support of his § 1983 claims. *See doc. 22* at 10, 11. Defendants oppose Plaintiff's motion on the basis of futility of amendment. *See generally doc. 25*. The Court will consider Defendants' Motion to Dismiss (*doc. 19*) and Plaintiff's Motion to Amend (*doc.* 22) in turn.

## II.   PLAINTIFF'S FACTUAL ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff is a former Sheriff's Deputy at the Roosevelt County Sheriff's Office. *Doc. 15* at 1-3. The events at the nexus of the present action began on March 24, 2016, when Plaintiff arrested Julien Aranda during a traffic stop. *Id.* at 4. That same day, Deputy Sheriff McCasland, a fellow police officer at the Roosevelt County Sheriff's Office, privately relayed to Plaintiff a story about once intentionally injuring a detainee in the back of his police vehicle by forcefully applying the brakes. *Id.* at 4-5. Deputy

McCasland told Plaintiff he was employed by another law enforcement agency at the time he injured the detainee. *Id.* at 4.

   Three days later, on March 27, Mr. Aranda complained to Plaintiff's supervisor, Defendant Lieutenant Javier Sanchez, about the circumstances of his March 24 arrest. *Id.* at 5. Mr. Aranda is either a friend or a family member of Defendant Sanchez. *Id.* Mr. Aranda made false allegations that Plaintiff had used excessive force and held him at gunpoint during the traffic stop. *Id.* Defendant Sanchez did not inform Plaintiff that Mr. Aranda had lodged this complaint or question Plaintiff about whether Mr. Aranda truthfully described Plaintiff's conduct. *Id.* Defendant Sanchez later spoke to Plaintiff about the traffic stop of Mr. Aranda and told him that the stop itself was illegal. *Id.* at 5-6. However, a fellow Sheriff's Deputy who was present during the conversation agreed with Plaintiff that reasonable suspicion existed for the stop. *Id.*

   On April 1 or 2, Plaintiff secretly recorded a conversation with Deputy McCasland using both a video and audio recorder. *Id.* at 6. The two officers again discussed Deputy McCasland's story about intentionally injuring a detainee. *Id.* Deputy McCasland told Plaintiff he had shared the story in confidence and that the incident occurred when he was a "rookie." *Id.* Deputy McCasland also said during the conversation that he was "best friends" with Defendant Sanchez. *Id.* at 7.

   On April 5, Plaintiff reported Deputy McCasland's prior conduct to Sheriff's Sergeant Mark Morrison, who told Plaintiff that he would inform Defendant Sanchez of

3

the report.  *Id.*  The following week, on April 13, Defendant Sanchez presented Plaintiff with a letter notifying him that he had been terminated from employment with the Sheriff's Office.  *Id.*  Attached to the notice was an Employee Performance Report dated April 12, 2016.  *Id.* at 7-8.  The performance report stated that Plaintiff's termination was due to poor job performance, that the traffic stop of Mr. Aranda was initiated without probable cause, that video of the traffic stop was not consistent with Plaintiff's report of the incident, that the charges against Mr. Aranda should never have been filed, and that Plaintiff intentionally falsified a police report.  *Id.* at 8-9.  The criminal charges against Mr. Aranda are still pending.  *Id.* at 10.  The notice of Plaintiff's termination was provided to the Human Resources Administrator for Roosevelt County, the County attorney, and other third parties.[1]  *Id.* at 9.

In addition to the explanations provided in the termination notice, Defendant Sanchez further informed Plaintiff orally that the reason for his termination was that he was not "fitting in" with the department.  *Id.*  Plaintiff understood "fitting in" as a euphemism for engaging in, condoning, and maintaining silence about illegal and improper police conduct.  *Id.*  Plaintiff told Defendant Sanchez about the recording he had made of his conversation with Deputy McCasland, and Defendant Sanchez said that he would investigate the recording but declined to watch the video with Plaintiff.  *Id.*

---

[1] Plaintiff does not identify these other third parties.

Plaintiff claims his discharge from employment was in retaliation for speech protected by the First Amendment—namely, his report of Deputy McCasland's conduct and his statements made in defense of the traffic stop of Mr. Aranda.  *Id.* at 10, 19.  He further claims that the allegations in the Employee Performance Report were both false and stigmatizing, and that they have caused a deprivation of his liberty interest by limiting his freedom to obtain other employment in law enforcement.  *Id.* at 14-18.  Plaintiff claims that Roosevelt County Sheriff Malin Parker has a long-standing and continuous "policy, practice, routine and custom" of (1) failing to properly train employees in conducting internal investigations; (2) maintaining a code of silence regarding wrongdoing by police officers, including illegal and unprofessional behavior;[2] (3) retaliating against any employee who violates the code of silence or challenges the misconduct of other employees; and (4) intimidating and retaliating against citizens who engage in speech opposing him or his policies.  *Id.* at 10-14.

## III.   MOTION TO DISMISS

Defendants assert that Plaintiff's First Amended Complaint should be dismissed due to Plaintiff's failure to sufficiently plead a violation of his constitutional rights.  *Doc. 20* at 8-18.  Additionally, Defendants Roosevelt County Board of County Commissioners and the Roosevelt County Sheriff's Office ("County Defendants") argue that the claim against them should be dismissed on the alternative ground that the

---

[2] Plaintiff includes a list of twenty-four separate incidents involving police misconduct in support of this allegation.

Complaint fails to establish municipal liability.  *Id.* at 18-22.  Defendants Malin Parker and Javier Sanchez also assert a qualified immunity defense.  *Id.* at 22-24.

Plaintiff argues that he has pled the necessary elements to show both a deprivation of his liberty interest without due process in violation of the Fourteenth Amendment as well as retaliation for exercising his right of free speech in violation of the First Amendment.  *Doc. 21* at 4-16.  Plaintiff further argues that his pleading establishes the requisite elements of municipal liability,[3] and that the facts as alleged defeat the individual Defendants' qualified immunity defense.  *Id.* at 16-24.

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and must view them in the light most favorable to the nonmoving party.  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Id*. (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

---

[3] To establish municipal liability, a plaintiff must show two elements: (1) the existence of an official municipal policy or custom; and (2) a direct causal link between the policy and the constitutional violation alleged.  *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

The court need only evaluate allegations "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). Further, the court is not required to accept conclusions of law or the asserted application of law to the alleged facts. *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994). Following these principles, the Court considers whether the facts "plausibly give rise to an entitlement to relief." *Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677-78).

**B.  Analysis**

Before addressing the arguments explained above regarding municipal liability and qualified immunity, the Court must consider as an initial matter whether Plaintiff's First Amended Complaint sufficiently pleads a deprivation of his constitutional rights. If not, no liability can attach to Defendants under 42 U.S.C. § 1983 in any event.

**i.  Fourteenth Amendment Claim**

Plaintiff argues that the circumstances of his dismissal violated his protected liberty interest under the Fourteenth Amendment, because the statements contained in the Employee Performance Report attached to his termination notice were false and have caused "serious damage to his reputation and standing" in the community at large. *Doc. 15* at 16.  The dismissal of a public employee may implicate his liberty interest where the circumstances of the dismissal curtail his freedom to pursue future employment. *Asbill v. Hous. Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984).  Summarizing the relevant law on this type of claim, the Tenth Circuit has explained that a plaintiff must establish three elements to prevail:

> First, . . . to be actionable, the defamation must occur in the course of the termination of employment.  Second, the stigmatizing statement must be disclosed publicly.  Third, the stigmatizing statement must be false. Indeed, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation.

*Melton v. City of Okla. City*, 928 F.2d 920, 926 (10th Cir. 1991) (internal citations and quotation marks omitted).  Plaintiff need not prove actual denial of a particular job

opportunity to show a deprivation of his liberty interest, but he must show his termination was "based upon a publicized false charge of sufficient opprobrium that would make the plaintiff an unlikely candidate for employment by a future employer." *Id.* at 927 n.11.

Defendants argue that Plaintiff has failed to plead that the statements attached to his termination notice were published or that they were sufficiently stigmatizing to implicate his liberty interest, and he therefore fails to state a constitutional claim for a deprivation of his liberty interest. *See doc. 20* at 8-13. The Court will address the publication and stigma prongs in turn.

      *1. Publication*

Plaintiff alleges that his termination notice and Employee Performance Report "were provided to the Human Resources Administrator, the County contract attorney[,] [and] other third parties." *Doc. 15* at 9. Plaintiff further alleges that he was denied two different positions in law enforcement due to the false allegations included in the Employee Performance Report. *Id.* at 17. These are the sole factual allegations in any way related to the publication element. *See generally doc. 15*.

The Tenth Circuit has held that "intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication: 'to be made public.'" *Asbill v. Hous. Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984) (quoting *Bishop v. Wood*, 426 U.S. 341, 348 (1976)). Therefore, Plaintiff's allegation that the termination

notice and the Employee Performance Report were provided to the Human Resources Administrator and the County Attorney of Roosevelt County—governmental employees of the county—fails to satisfy the publication prong.

Plaintiff's vague assertion that "other third parties" also received the Employee Performance Report is also insufficient to adequately plead publication. Making specific allegations of who did what is particularly important in § 1983 cases. *See Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011); *Robbins v. Oklahoma*, 519 F.3d 1242, 1248-49 (10th Cir. 2008). Plaintiff's broad claim about third parties being provided the documents fails to allege either who did the "providing" or to whom they provided it. Of course, the category of "third parties" would include intra-governmental dissemination which would not qualify as "publication." *See generally doc. 15*. Indeed, elsewhere in the Complaint it appears that these "other third parties" are detention center personnel. *See id.* at 5; *see also doc. 21* at 11 (Plaintiff naming detention center personnel as an example of third parties to whom his Complaint alleged the information was published, in arguing the sufficiency of his pleading on the Fourteenth Amendment claim). Consequently, the allegation that "third parties" received the notice and report does not adequately plead the publication requirement.

Finally, the Court recognizes that Plaintiff asserts that he was not hired when he applied for jobs with the Clovis Police Department and the San Juan County Sheriff's Office "because of the allegations contained in the bogus 'Employee Performance

10

Report.'"  *Doc. 15* at 17.  As an initial matter, it must be noted that Plaintiff does not

expressly allege that these prospective employers actually received the report.  Instead,

he asserts only that they had knowledge of the allegations contained therein.  Even

making the leap that Plaintiff claims that they received the report itself, Plaintiff offers

no factual allegations regarding the means by which they did so.  *See generally id*.

Broadly speaking, they could have received the report due to the conduct of Plaintiff,

one of the Defendants, or some third party not involved in the lawsuit.  In the event that

Plaintiff authorized or requested that his former employer provide the report to his

prospective employers, the publication prong would not be met.  *Rich v. Sec'y of the*

*Army*, 735 F.2d 1220, 1227 (10th Cir. 1984).  And certainly, the publication of a third

party would not establish liability of the Defendants.  Only publication by a Defendant

could establish liability for the deprivation of Plaintiff's liberty interest.  Yet, while the

abstract possibility exists that some Defendant independently provided the report to

Plaintiff's prospective employers, Plaintiff simply does not include any such allegation

in his pleading.  *See generally doc. 15*.  Thus, the facts as pled "do not permit the court to

infer more than the mere possibility of misconduct," which falls below the pleading

standard required by the Federal Rules.  *Iqbal*, 556 U.S. at 679.

     *2.  Stigma*

     The Court generally may not consider matters outside the Complaint when

deciding a 12(b)(6) motion to dismiss without first converting it to a motion for

summary judgment.  Fed. R. Civ. P. 12(d); *see also Brown v. Zavaras*, 63 F.3d 967, 969 (10th Cir. 1995).  However, Plaintiff himself notes a key exception to the general rule that is applicable here.  *See doc. 21* at 3-4.  Specifically, where a plaintiff "does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim," the Court may consider "an indisputably authentic copy" of the document submitted by the Defendant on a motion to dismiss.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (collecting cases).  The Tenth Circuit has explained the rationale underlying this exception:

> If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied.  Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind.  When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.

*Id.* at 1385.

Plaintiff's Complaint alleges that the Employee Performance Report attached to his termination letter included a false claim "that Plaintiff had engaged in illegal and unprofessional conduct by intentionally falsif[ying] a police report[.]"  *Doc. 22* at 12.  Normally, the Court would be required to take this allegation as true and would

accordingly find that the stigma prong of the deprivation of liberty claim has been met.[4]

However, the Employee Performance Report is central to Plaintiff's deprivation of

liberty claim in this case, as that claim is founded entirely on the allegedly false and

stigmatizing statements contained in the report to which Plaintiff repeatedly refers in

his Complaint.  *See id.* at 20-22.  Thus Plaintiff is "obviously on notice" of the contents of

the report.  *GFF Corp.*, 130 F.3d at 1385.  It is therefore appropriate for the Court to

consider the copy of the Employee Performance Report provided by Defendants as

Exhibit A to their brief in support of their Motion to Dismiss (*doc. 20-1*) without first

converting Defendants' motion to a motion for summary judgment.

Upon consideration of the document, the Court finds that the report does not

include an accusation that Plaintiff falsified a police report.  Rather, the report, authored

by Lieutenant Javier Sanchez, contains two different statements regarding ways in

which Plaintiff's police report and video of the incident described in the police report

"are not consistent with one another." *Doc. 20-1* at 3.[5]  Additionally, Lieutenant Sanchez

wrote in the Employee Performance Report that Plaintiff's booking form and criminal

---

[4] An accusation that a police officer filed a false police report would undoubtedly be sufficiently stigmatizing to satisfy the stigma element of a liberty interest violation.  *See Palmer v. City of Monticello*, 31 F.3d 1499, 1503 (10th Cir. 1994) ("We are satisfied that an accusation that a police officer falsified a speeding ticket qualifies as a stigmatizing charge which amply supports that element of a liberty interest violation.").

[5] The first inconsistency between the report and the video as identified by Lieutenant Sanchez was the distance traveled by the vehicle during the traffic stop.  *Doc. 20-1* at 3.  The second inconsistency identified by Lieutenant Sanchez is that contrary to Plaintiff's report that the vehicle's driver struck Plaintiff's left arm during the traffic stop, the video appeared to show instead that the driver "pulled away and resisted while you were attempting to gain compliance." *Id.*  Sanchez accordingly wrote that the video "was not consistent with [the driver] striking you." *Id.*

complaint "are also not consistent" and noted that "[w]e have spoken about attention to detail of your paperwork on numerous occasions[.]"  *Id.* at 3-4.  Lieutenant Sanchez checked the box for "Poor Job Performance" as the reason for Plaintiff's termination, rather than the box for "Violation of Personnel Ordinance" or "Other."  *Id.* at 2.

A thorough review of the report thus reveals that the inconsistencies identified between Plaintiff's police report and the video of the incident did not amount to a charge that Plaintiff fabricated a police report, even drawing all reasonable inferences in Plaintiff's favor.  Rather, these "inconsistencies" were identified merely as part of a continuing pattern of Plaintiff's negligence in preparing paperwork.  *Doc. 20-1* at 4.  Such statements are not so stigmatizing as to attach a "badge of infamy" to Plaintiff, which is required before "due process comes into play."  *See Stritzl v. U.S. Postal Serv.*, 602 F.2d 249, 252 (10th Cir. 1979) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433 (1971)); s*ee also Martin v. Unified Sch. Dist. No. 434*, 728 F.2d 453, 455-56 (10th Cir. 1984) (statements appearing in the local newspaper that a plaintiff's termination was based "on occurrences this year and continuance of previous concerns" not enough to implicate his liberty interest).

Charges that a public employee was merely "negligent or derelict in performing [his] duties" are not sufficiently stigmatizing to implicate a protected liberty interest.  *Sullivan v. Stark*, 808 F.2d 737, 739 (10th Cir. 1987).  Characterizing a public employee as having "poor work habits and low productivity," too, falls short of attaching a "badge

14

of infamy" to a plaintiff. *Stritzl*, 602 F.2d at 252. The statements contained in the Employee Performance Report do not go beyond such charges. *Cf. Walker v. United States*, 744 F.2d 67, 69 (10th Cir. 1984) (stigma prong is met where a plaintiff is "accused of lying" on a government form, because such an accusation "bring[s] into question his good name, reputation, honor and integrity."). Nor does Plaintiff's allegation that his termination has made him less attractive to potential employers suffice to show that he has been stigmatized to the extent necessary to support a Fourteenth Amendment claim. *Martin*, 728 F.2d at 455-56.

In conclusion, the Court finds that the First Amended Complaint fails to state a plausible constitutional claim for a deprivation of his liberty interest due to insufficient factual allegations supporting the elements of publication or stigma. Accordingly, Plaintiff's Fourteenth Amendment claim is subject to dismissal.

### ii. First Amendment Retaliation Claim

Plaintiff next argues that Defendants violated his constitutional right by retaliating against him for engaging in speech protected by the First Amendment. *Doc. 15* at 19. Plaintiff argues that the First Amendment protects his report of Deputy McCasland's conduct to Defendant Sanchez as well as his statements opposing Defendant Sanchez's opinions regarding the traffic stop of Mr. Aranda, and that his termination was substantially motivated by these protected speech acts. *Id.*

The Tenth Circuit Court of Appeals has established a five-step inquiry for analyzing freedom of speech retaliation claims, which it has named the "*Garcetti/Pickering* analysis" in recognition of the two Supreme Court cases that helped shape it.  *See Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563 (1968).  The inquiry is as follows:

> First, the court must determine whether the employee speaks "pursuant to his official duties."  If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created."  Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern.  If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends.  Third, if the employee speaks as a citizen on a matter of public concern, the court must determine "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer."  Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a "substantial factor or a motivating factor in a detrimental employment decision."  Finally, if the employee establishes that his speech was such a factor, "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech."

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007) (internal citations and alterations omitted).

The Court will first address whether Plaintiff's speech made in opposition to Defendant Sanchez's opinions regarding the traffic stop of Mr. Aranda was protected under the First Amendment.  This question implicates the first three steps of the inquiry described above, and the Supreme Court's guidance in *Garcetti* leads to a clear answer.

16

*See* 547 U.S. 410.  There, a prosecutor wrote a memorandum to his supervisor conveying his opinion that a case should be dismissed based on perceived inaccuracies in the warrant affidavit.  *Id*. at 413-14.  In holding that the prosecutor spoke pursuant to his official duties in "fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case," the Court explained that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."  *Id.* at 421-22.  Much like the plaintiff in *Garcetti*, Plaintiff expressed his views in the workplace, on the subject of his employment, and pursuant to his duties as a public employee.  *See id.* at 420-21.  Plaintiff's speech to his supervisor on the subject of the legality of a traffic stop he effected as a police officer is speech that owes its existence to Plaintiff's professional responsibilities.  It is not entitled to constitutional protection.

Next, Plaintiff argues that he has sufficiently pled a First Amendment retaliation claim by alleging that he was terminated due to his report of Deputy McCasland's conduct to Sergeant Morrison.  *Doc. 21* at 13-16.  In arguing that his report was constitutionally protected speech, Plaintiff notes that his pleading asserts that his report "did not contribute to or facilitate Plaintiff's performance of official duty and in fact subjected him to retaliation[.]"  *Doc. 21* at 15 (quoting *doc. 15* at 7).  Plaintiff further argues that his speech was not made pursuant to orders or as part of his job, but rather in defiance of "the standing code of silence."  *Doc. 21* at 14 (citing *doc. 15* at 7-8).

17

Plaintiff reasons that, because he pled that he was *violating* the policies of the Sheriff's Office rather than speaking pursuant to them, he sufficiently stated a claim that his speech was outside the *Garcetti* scope of unprotected speech made pursuant to official duties. *Doc. 21* at 15-16.

However, speech made in defiance of the policies of employment or the direction of supervisors may still be considered unprotected speech made pursuant to official duties. *See, e.g.*, *Green v. Bd. of Cty. Comm'rs*, 472 F.3d 794, 800-01 (10th Cir. 2007) (finding that a county drug lab employee who defied her supervisors by speaking on her concerns about certain drug tests was acting pursuant to her official duties "even if [her actions were] not explicitly required as part of her day-to-day job responsibilities," because they "stemmed from and were the type of activities that she was paid to do."). The Tenth Circuit's decision in *Casey v. West Las Vegas Ind. Sch. Dist.* is particularly instructive on this point. 473 F.3d 1323 (10th Cir. 2007). There, the Court of Appeals held that a school district superintendent who reported the district's noncompliance with federal law was acting within the scope of her employment and speaking pursuant to her official duties, despite the fact that she made the report in direct contravention of her superiors' direction to suppress her findings. *Id.* at 1331-32. The Court explained that even though her speech was opposed by her supervisors, "her decision to report the District's noncompliance to federal authorities was nonetheless in accordance with

18

(and perhaps even an indispensable part of) her job as the senior official responsible for the sound administration of the federally funded program she administered." *Id*.

Moreover, while the Tenth Circuit Court of Appeals has not directly addressed whether a police officer's internal report of a fellow police officer's misconduct is speech made pursuant to official duties and thus unprotected under the rule of *Garcetti*, it did uphold a district court's finding that two police officers acted pursuant to their official duties when they reported the corrupt conduct of the chief of police and a city councilman to the Kansas Attorney General. *See Cheek v. City of Edwardsville, Kan.*, 324 F. App'x 699, 700-01 (10th Cir. 2008) (unpublished). This question has also been answered in the affirmative by three other Circuit Courts of Appeal. *See, e.g., Kubiak v. City of Chi.*, 810 F.3d 476, 483 (7th Cir. 2016) (explaining that "in the context of a police department, it makes even more sense to expect officers to report that a fellow officer acted violently. [The plaintiff] is a police officer, and as part of that job, she is responsible for protecting the public from harm[.]); *Knight v. Drye*, 375 F. App'x 280, 283-84 (3d Cir. 2010) (unpublished) (police officer's out-of-court reports of fellow officer misconduct made up the chain of command are not protected by First Amendment); *Carter v. Inc. Vill. of Ocean Beach*, 415 F. App'x 290, 293 (2d Cir. 2011) (police officers' report of "what they believed to be misconduct by a supervisor up the chain of command" was made pursuant to official duties and thus not protected under *Garcetti*).

Plaintiff rightly notes that the Ninth Circuit has on occasion granted constitutional protection even to a public employee's internal reports of misconduct, where he raises "broad concerns about corruption or systemic abuse" or where he "speaks in direct contravention to his supervisor's orders."  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074-76 (9th Cir. 2013).  Of course, this Court must always look first to the relevant Tenth Circuit precedent for guidance and *Dahlia* appears to be in significant tension with Tenth Circuit pronouncements on the matter.  *See Cheek*, 324 F. App'x at 700-01; *Casey*, 473 F.3d at 1331-32; *Green*, 472 F.3d at 800-01.  As noted above, in both *Casey* and *Green*, the Tenth Circuit has held that speech made in direct violation of a supervisor's orders is nevertheless made pursuant to official duties and is thus unprotected.  Such holdings are difficult to square with the *Dahlia* court's conclusion "that when a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties."  *Dahlia*, 735 F.3d at 1075; *contra Bowie v. Maddox*, 653 F.3d 45, 46-48 (D.C. Cir. 2011).

However, even assuming the applicability of the *Dahlia* "exception," Plaintiff does not fall within it.  Most importantly, Plaintiff was not speaking in "direct contravention to his supervisor's orders."  Plaintiff does not allege he was ever directed not to report Deputy McCasland's misconduct.  Instead, he claims only that Defendant Parker "had a policy of a 'blue wall of silence' which discouraged officers from coming forward to report wrongdoing."  *Doc. 15* at 14.  Moreover, the *Dahlia* court made clear

that "particularly in a highly hierarchical employment setting such as law enforcement, whether or not the employee confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor in determining whether he spoke pursuant to his official duties." *Dahlia*, 735 F.3d at 1074.  Here, Plaintiff alleges only two reports made to individuals within the chain of command in the Department.  Given the lack of an explicit order not to report and the Plaintiff's limited reporting of the misconduct, the *Dahlia* "exception" is inapplicable to Plaintiff's claim.

In conclusion, the Court is persuaded that, even accepting Plaintiff's allegations regarding his First Amendment retaliation claim, he was speaking pursuant to his official duties, and therefore the speech was not entitled to constitutional protection. Accordingly, Plaintiff's First Amendment claim is subject to dismissal.

## IV.    MOTION TO AMEND

Plaintiff seeks to amend his Complaint a second time to include additional factual allegations in support of his claims.  *Doc. 22*.  Defendants argue that the Court should deny Plaintiff's motion because his proposed amendments do not cure the defects identified in their Motion to Dismiss and would thus be futile.  *See generally doc. 25*.  In support of his Motion, Plaintiff reiterates the arguments set forth in opposition to Defendants' Motion to Dismiss and further points out that Defendants will not suffer any prejudice if the Court allows the amendment, as they have not yet filed an Answer in this matter.  *See generally doc. 26*.

### A.  Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the Court should "freely give" leave to amend when justice so requires.  FED. R. CIV. P. 15(a)(2).  The Supreme Court has explained this directive to require that leave be given absent an "apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The requirement to grant leave to amend freely "does not apply where an amendment obviously would be futile."  *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992).  Denial of a motion to amend is "clearly justified" on the basis of futility where the proposed amendment "could not have withstood a motion to dismiss or otherwise failed to state a claim."  *Schepp v. Fremont Cty., Wyo.*, 900 F.2d 1448, 1451 (10th Cir. 1990).

### B.  Analysis

Plaintiff proposes two amendments to his First Amended Complaint.  These include the following additional factual allegations: (1) Plaintiff told Sergeant Mark Morrison that he had recorded his conversation with Deputy McCasland, and that Sergeant Morrison admonished Plaintiff that he violated office policy by recording the encounter; and (2) Plaintiff reported Deputy McCasland's conduct to the Portales Police

Department on April 6, 2016, which was an action taken outside of Plaintiff's normal course of duties as a police officer with the Roosevelt County Sheriff's Office.  *Doc. 22* at 10, 11.

The Court's futility analysis must examine whether these additional allegations cure the defects the Court found in Plaintiff's First Amended Complaint.  *See, e.g.*, *Schepp*, 900 F.2d at 1451.  The first proposed amendment is aimed at establishing municipal liability by showing that an official policy or custom was the moving force behind the constitutional violations Plaintiff alleges.  *Doc. 26* at 3, 5-7; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).  The second is aimed at overcoming the defect in Plaintiff's First Amendment retaliation claim by establishing that he engaged in protected speech—that is, speech not made pursuant to his official duties.  As in the analysis above, the Court will address the second proposed amendment first, given that Plaintiff's pleadings must first establish a constitutional violation before it is appropriate to address municipal liability.

### i. First Amendment Retaliation Claim

As explained above, Plaintiff's First Amendment claim presently fails because his report of Deputy McCasland's conduct to Sergeant Morrison, a higher-ranking officer at the Roosevelt County Sheriff's Office, was speech made pursuant to his official duties and thus does not warrant First Amendment protection.  Plaintiff proposes an amendment to add the factual allegation that Plaintiff also reported Deputy

McCasland's conduct to the deputy's former employer, the Portales Police Department, outside of the supervisory channels in Plaintiff's own office. *See doc. 22* at 11. Although Plaintiff's report to the Portales Police Department consisted of the very same speech that was made internally to a higher-ranking officer, the speech may nevertheless be constitutionally protected in the former instance but not the latter. *See Morales v. Jones*, 494 F.3d 590, 598 (7th Cir. 2007) ("We recognize the oddity of a constitutional ruling in which speech said to one individual may be protected under the First Amendment, while precisely the same speech said to another individual is not protected . . . . [Yet] *Garcetti* established just such a framework, and we are obliged to apply it.").

However, while Plaintiff's proposed amendment might cure the pleading defect related to whether his speech was made pursuant to official duties, another defect would arise at the fourth step of the Tenth Circuit's "*Garcetti/Pickering* analysis" applied to First Amendment retaliation claims. *See Brammer-Hoelter*, 492 F.3d at 1203. At that step, "the employee must show that his speech was a 'substantial factor or a motivating factor in [a] detrimental employment decision.'" *Id.* (quoting *Lybrook v. Members of Farmington Mun. Schs. Bd. Of Educ.*, 232 F.3d 1334, 1338) (alteration in original). Before Plaintiff can show that his speech was a substantial or motivating factor in the decision to terminate him, he must at the very least establish that Defendants knew of the speech. *See Hook v. Regents of Univ. of Cal.*, 394 F. App'x 522, 539 (10th Cir. 2010)

("Axiomatic to establishing causation in [the First Amendment retaliation claim] context is proof that the employer knew of the employee's protected conduct.").

Plaintiff argues that there is a reasonable inference that his supervisors knew of his report to the Portales Police Department "because of the short proximity in time between the report and Plaintiff's termination." *Doc. 26* at 7.  Plaintiff cites several persuasive authorities but no binding authority for the proposition that temporal proximity suffices to establish a causal connection between protected activity and retaliation.  *See id.* at 7-8 (citing cases from the Eleventh and Ninth Circuits as well as the Northern District of Illinois).  The Tenth Circuit has in fact stated to the contrary that "temporal proximity is insufficient, without more, to establish [an employee's protected] speech as a substantial motivating factor in an adverse employment decision." *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005).[6]

Even adding the proposed amendments to the First Amended Complaint, Plaintiff would have failed to allege any facts demonstrating that Defendants knew of his report to the Portales Police Department (*see generally doc. 22*), nor does a reasonable

---

[6] Even if the Court were to take into account the temporal proximity between Plaintiff's report to the Portales Police Department and his termination, the arrest of Mr. Aranda, both Plaintiff's internal and external reports of Deputy McCasland's conduct, and Plaintiff's termination all occurred within the same short three-week time period.  *See doc. 22* at 7, 10-12.  Plaintiff was terminated on April 13, 2016, eight days after he reported Deputy McCasland to Sergeant Morrison and twenty days after he effected the arrest of Mr. Aranda.  *See id.* at 7, 10, 11.  By Plaintiff's own charge, the circumstances of the Aranda arrest formed the basis of the negative Employee Performance Report that was attached to his termination letter.  *See id.* at 11-12.  Viewing the facts in the light most favorable to Plaintiff, the only reasonable inference to draw in his favor is that Plaintiff was terminated as a result of reporting the illegal conduct of a fellow deputy to Sergeant Morrison and for arresting the friend and family member of his supervisor Defendant Sanchez.

inference emerge from the facts alleged that they did so know.  Indeed, it is plain from

his pleading, even viewing it in the light most favorable to him, that Plaintiff himself

~~believes~~ contends that Defendants terminated him ~~primarily~~ in retaliation for his act of

arresting Mr. Aranda as well as his internal report of misconduct, neither of which is

protected activity under the First Amendment.  *See doc 22* at 13-14.

Plaintiff has failed to plead that his external report of Deputy McCasland's

conduct was a substantial or motivating factor Defendants' choice to terminate him, or

even that Defendants knew of the speech.  Although the fourth step of the

"*Garcetti/Pickering* analysis" is ordinarily for the trier of fact to resolve, *see Brammer-*

*Hoelter*, 492 F.3d at 1203, Plaintiff has pled no facts that give rise to a plausible inference

that he has met that step, rendering his pleading insufficient to survive a motion to

dismiss.  *Twombly*, 550 U.S. at 570.  Rather, he has offered a mere "threadbare recital" of

the elements required to establish a First Amendment retaliation claim without offering

any accompanying factual support.  *See Iqbal*, 556 U.S. at 678.  The Court thus finds that

Plaintiff's proposed amendment does not save his First Amendment claim from

dismissal.

Because Plaintiff has failed to sufficiently allege any constitutional violations in

the first instance, the Court need not address whether Plaintiff's proposed amendments

could plausibly establish a municipal liability claim or whether the individual

Defendants are entitled to qualified immunity.  Allowing Plaintiff to file his proposed

Second Amended Complaint would be futile, and his Motion to Amend must be denied.

## V.   NEW MEXICO WHISTLEBLOWER PROTECTION ACT CLAIM

In addition to his § 1983 claims, Plaintiff has brought a state law claim of retaliatory discharge in violation of a subsection of the New Mexico WPA. *See doc. 15* at 1, 20-22. The WPA prohibits a public employer from taking "any retaliatory action against a public employee because the public employee . . . communicates to the public employer or a third party information about an action . . . that the public employee believes in good faith constitutes an unlawful or improper act[.]" N.M.S.A. 1978, § 10-16C-3(A). The Court has jurisdiction over the WPA claim solely by virtue of the fact that it is "part of the same case or controversy under Article III of the United States Constitution" as the § 1983 claims over which the Court has original jurisdiction. 28 U.S.C. § 1367(a). The Court may decline to exercise its supplemental jurisdiction over the remaining state law claim now that it has dismissed both of Plaintiff's federal claims. *Id.* at § 1367(c)(3). Indeed, when all federal claims have been dismissed, the Court "usually should[] decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998). Accordingly, the Court declines to exercise its supplemental jurisdiction over Plaintiff's remaining WPA claim and will dismiss it.

## VI.   NATURE OF DISMISSAL

When, as here, a complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6) and amendment is futile, dismissal with prejudice is appropriate.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *see also Sheldon v. Vermonty*, 269 F.3d 1202, 1207 (10th Cir. 2001) ("[A]s is the case with a dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, such a dismissal fully disposes of the case, and it must therefore be with prejudice."); *Higgins v. City of Tulsa, Okla.*, 103 F. App'x 648, 651 (10th Cir. 2004) ("[A] dismissal under Rule 12(b)(6) for failure to state a claim is generally *with* prejudice").  While there are several exceptions to the general rule, only one is pertinent to the case at hand.  A dismissal that does not reach the merits of the complaint and instead rests on a jurisdictional defect should be without prejudice.  *See Brereton*, 434 F.3d at 1219.  Because the Court did not address the merits of Plaintiff's state law claim, that claim shall be dismissed without prejudice.  Plaintiff's federal claims, however, shall be dismissed with prejudice, as Plaintiff has failed to show that he could state a viable cause of action against Defendants under 42 U.S.C. § 1983 had he been granted yet another opportunity to amend his complaint.  *See Sheldon*, 269 F.3d at 1207 n.5.

## VII.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss First Amended Complaint (*doc. 19*) is **GRANTED**, and Plaintiff's Motion to File Second Amended Complaint (*doc 22*) is **DENIED** as futile.  The claims set forth in Counts I and II of

Plaintiff's Complaint are therefore dismissed with prejudice, and the claim set forth in

Count III of Plaintiff's Complaint is dismissed without prejudice.


      **IT IS SO ORDERED.**

GREGORY B. WORMUTH
United States Magistrate Judge
**Presiding by Consent**